**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

THE ISLAMIC SOCIETY OF TULSA,
*Plaintiff,*

v.

CITY OF BROKEN ARROW, OKLAHOMA et al.,

*Defendants.*

Civil Case No. 4:26-cv-00469-SEH-MTS

**PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF BROKEN ARROW'S MOTION TO DISMISS**

Plaintiff, Islamic Society of Tulsa ("IST" or "Plaintiff"), files this Opposition in response to the Defendant City of Broken Arrow's ("the City Defendant," "the City," or "Defendant"), Motion to Dismiss. Dkt 27.

## TABLE OF CONTENTS


TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

STANDARD ........ 1

ARGUMENT ........ 2

I. IST Has Sufficiently Alleged That the City Acted with a Discriminatory Purpose ........ 2

II. IST Has Sufficiently Alleged That the City's Decision Placed a Substantial Burden on IST's Religious Exercise in Violation of RLUIPA and OFRA. ........ 6

A. The burden Defendant is imposing on IST is substantial ........ 7

B. Defendant's actions do not survive strict scrutiny. ........ 10

III. IST Has Sufficiently Alleged That the City's Decision Violated the Free Exercise Clause. ........ 14

IV. IST Has Sufficiently Alleged That the City Applied the Zoning Ordinance in a Manner that Violated the Establishment Clause. ........ 16

V. IST Has Sufficiently Alleged That the City Violated RLUIPA's Equal Terms Provision. ........ 19

A. The identified secular entities are similarly situated comparators for purposes of the Equal Terms Provision. ........ 20

B. Even under the Eleventh Circuit test, the Equal Terms claim survives. ........ 22

C. Additional places of assembly are viable comparators even under the most narrow reading of the provision. ........ 24

VI. IST Has Sufficiently Alleged That the City's Decision Violated the Equal Protection Clause. ........ 25

VII. IST's OFRA Claim against the City is Not Subject to the Notice or Immunity Provisions of the GTCA. ........ 27

CONCLUSION ........ 28

# TABLE OF AUTHORITIES

## Cases

*Anash, Inc. v. Borough of Kingston*, 184 F.4th 214 (3d Cir. 2026) .......... 7
*Ashaheed v. Currington*, 7 F.4th 1236 (10th Cir. 2021) .......... 26, 27
*Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007) .......... 1
*Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548 (4th Cir. 2013) .... 8
*Bowen v. Kendrick,* 487 U.S. 589 (1988) .......... 16, 17
*Brown v. City of Tulsa*, 124 F.4th 1251 (10th Cir. 2025) .......... 2, 28
*Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231 (10th Cir. 2013) .......... 2
*Catholic Charities Bureau, Inc. v. Wisconsin Lab. & Indus. Rev. Comm'n*, 605 U.S. 238 (2025) .......... 16, 18
*Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Commn.*, 768 F.3d 183 (2d Cir. 2014) .......... 2, 4
*Chabad of Nova, Inc. v. City of Cooper City*, No. 07-60738-CIV, 2007 WL 9700874 (S.D. Fla. Oct. 15, 2007) .......... 24
*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520 (1993) ....... 11, 12, 14, 15
*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) .......... 25
*Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264 (10th Cir. 2023) .......... 2
*Colo. Christian Univ. v. Weaver*, 534 F.3d 1245 (10th Cir. 2008) .......... 26
*Croft v. Perry*, 624 F.3d 157 (5th Cir. 2010) .......... 17
*Cutter v. Wilkinson*, 544 U.S. 709 (2005) .......... 6
*Dailey v. City of Lawton, Okl.*, 425 F.2d 1037 (10th Cir. 1970) .......... 4
*Davis v. Gresham*, No. CIV-22-871-G, 2026 WL 821831 (W.D.Okla., 2026) .......... 2
*Dias v. City & Cty. of Denver*, 567 F.3d 1169 (10th Cir. 2009) .......... 2
*Dunn v. Solomon Found.*, 723 S.W.3d 711 (Ky. 2025) .......... 18
*Fortress Bible Church v. Feiner*, 694 F.3d 208 (2d Cir. 2012) .......... 8
*Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024) .......... 26
*Galette v. New Jersey Transit Corp.*, 607 U.S. 509 (2026) .......... 28
*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) .......... 11
*Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643 (10th Cir. 2006) .......... 25
*Islamic Socy. of Basking Ridge v. Township of Bernards*, 226 F. Supp. 3d 320 (D.N.J. 2016) ...... 4
*Johnson v. U. of Oklahoma*, No. CIV-24-495-PRW, 2026 WL 2884709 (W.D. Okla. Sept. 25, 2026) .......... 27
*Kendrick v. Sullivan*, 125 F.R.D. 1 (D.D.C. 1989) .......... 17
*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) .......... 1
*Larson v. Valente*, 456 U.S. 228 (1982) .......... 16, 19
*Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253 (3d Cir. 2007) .......... 20, 21, 22
*Lyng v. N.W. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988) .......... 9, 10

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir.2004)............................ 21
*Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp. 3d 1292 (D.N.M. 2018) .......................... 24
*Othart Dairy Farms, LLC v. Dairy Farmers of Am., Inc.*, 720 F. Supp. 3d 1087 (D.N.M. 2024)........................................................................................ 23
*O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218 (10th Cir. 2007) ................................ 24
*Poe v. Drummond*, 149 F.4th 1107 (10th Cir. 2025)......................................................... 26
*Poe v. Drummond*, 697 F. Supp. 3d 1238 (N.D. Okla. 2023) ............................................ 26
*Quinly v. City of Prairie Village, Kan.*, 446 F. Supp. 2d 1233 (D. Kan. 2006) ........................ 11
*Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022 (10th Cir. 2020).......................2, 28
*River of Life Kingdom Ministries v. Village of Hazel Crest, Ill*, 611 F.3d 367 (7th Cir. 2010) ...... 21
*Rocky Mt. Christian Church v. Bd. of Cnty. Com'rs of Boulder Cnty.*, 612 F. Supp. 2d 1163 (D. Colo. 2009)........................................................................... 10, 11, 22
*Rocky Mt. Christian Church v. Bd. of Cnty. Com'rs*, 613 F.3d 1229 (10th Cir. 2010)............... 22
*Satanic Temple, Inc. v. City of Boston*, 111 F.4th 156 (1st Cir. 2024) .................................... 17
*Savage v. Rogers*, No. CIV-25-300-HE, 2026 WL 2099349 (W.D. Okla. July 21, 2026)....... 28
*SECSYS, LLC v. Vigil,* 666 F.3d 678 (10th Cir. 2012) ...................................................... 26
*Sherman v. Quinn*, 735 F. Supp. 2d 1035 (C.D. Ill. 2010)................................................. 17
*Shrum v. City of Coweta*, 558 F. Supp. 2d 1212 (E.D. Okla. 2008) ..................................... 28
*Thiry v. Carlson*, 78 F.3d 1491 (10th Cir. 1996) .................................................................. 9
*Trinity Lutheran Church of Columbia, Inc. v. Comer,* 582 U.S. 449 (2017) ............................... 9
*U.S. v. City of Troy*, 592 F. Supp. 3d 591 (E.D. Mich. 2022) ............................................... 8
*U.S. v. Cnty. of Culpeper, Virginia*, 245 F. Supp. 3d 758 (W.D. Va. 2017) ............................. 8
*Viviani v. Coffey & Assocs., Inc.*, Case No. CIV-22-00090-PRW, 2023 WL 2432026 (W.D. Okla. Mar. 9, 2023)........................................................................................ 23
*Williamson v. Brevard County,* 928 F.3d 1296 (11th Cir. 2019) ........................................... 18
*Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014).....................................................9, 13

**Statutes**

42 U.S.C. § 2000cc ........................................................................... 6, 7, 10, 19
Okla. Stat. 51, § 253...........................................................................................6, 10

**Other Authorities**

146 Cong. Rec. S7774 (July 27, 2000) ................................................................... 20

## INTRODUCTION

There is not a single mosque in Broken Arrow, Oklahoma, and that is intentional. On January 12, 2026, the Broken Arrow City Council blocked the Islamic Society of Tulsa from building a mosque on its property. The applications were standard, and the City had approved several nearly identical applications for secular and Christian entities in recent months. The City's own staff and Planning Commission recommended approval of IST's applications.

But the City Council was under immense pressure to block the mosque. Once the plans for the mosque became public, the Council was swarmed by anti-Muslim emails urging them to prevent the mosque, and several Broken Arrow politicians pressured the Council to do the same. Multiple Councilors responded to these bigoted emails, including ones that claim Muslims are inherently violent and seek to take over the country, stating that they shared the same views. That is why, on January 12, 2026, the Council voted to deny both applications in full.

The City of Broken Arrow nonetheless argues that these detailed allegations of discrimination and unequal treatment are insufficient, and that the burden placed on IST is simply not substantial. In doing so, Defendant invites the Court to ignore a very blatant display of discrimination. The Court should decline that invitation.

## STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). In analyzing a motion to dismiss, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to

the plaintiff." *Davis v. Gresham*, No. CIV-22-871-G, 2026 WL 821831, at *2 (W.D.Okla., 2026) (citing *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013)). "Granting a motion to dismiss is a harsh remedy which must be cautiously studied[.]" *Brown v. City of Tulsa*, 124 F.4th 1251, 1264 (10th Cir. 2025) (citing *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023). The Tenth Circuit imposes a "low bar for surviving a motion to dismiss," *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020), and a complaint survives "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely[.]" *Id.* (quoting *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)).

## ARGUMENT

### I. IST Has Sufficiently Alleged That the City Acted with a Discriminatory Purpose.

IST has sufficiently alleged discrimination in support of its claims under the RLUIPA Nondiscrimination Provision, the Free Exercise Clause, and the Equal Protection Clause. *See Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Commn.*, 768 F.3d 183, 199 (2d Cir. 2014); *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1294 (10th Cir. 2004). Defendant's position that there are insufficient facts to infer religious discrimination ignores and minimizes a long list of factual allegations *See* Dkt. 2. First, at least two of the four City Council members who voted to block the mosque expressed anti-Muslim views in emails to constituents *specifically regarding IST's applications*. Mayor Wimpee responded to an email urging her to deny IST's applications because Muslims are violent by stating she has the "very same concerns." Dkt 2 at ¶ 75. Councilor Ford responded to an email urging her to deny IST's applications because Muslims intend to take over the country by stating "I agree with everything you pointed out." *Id.* at ¶ 86.

Additionally, politicians and portions of the community urged the City to deny IST's applications on religious grounds. Oklahoma State Representative Gabe Woolley publicly urged denial of IST's applications. *Id.* at ¶ 69. Oklahoma Attorney General Gentner Drummond announced that his office would investigate whether IST's mosque complied with Oklahoma law. *Id.* at ¶ 70. Several emails to Mayor Wimpee threatened to not vote for her for mayor again if she approved IST's applications. *Id.* at ¶ 65 ("[w]e will donate money to your opposition during the next election cycle. We will campaign and go door to door asking other citizens to turn away from supporting you."). Other threats focused on the council as a whole. *Id.* at ¶ 68 ("[i]f they allow this will have to see about them not being elected again for not listening to the people in Broken arrow.").

Moreover, the same exact City Council members who denied IST's applications had approved at least four similar applications for secular entities in the months and years surrounding the denial. Many if not all of these entities had even more of an impact on traffic and the surrounding land, but the Council approved them anyway. The City also routinely approved similar applications for Christian churches. *Id.* at ¶ 93-112. The City Staff and Planning Commission had recommended both of IST's applications for approval, and the Council provided no reason for deviating from those recommendations.

The City has not and cannot provide any objective reason for denying an Islamic group's application all while approving secular and Christian applications. Nor can they provide a reason why they deviated from their own staff and Planning Commission's recommendation. And they cannot provide a reason why they did not approve the applications with conditions, a less-discriminatory avenue that the zoning ordinance provides, and which the City routinely employed for non-Muslim applicants.

Each of these facts is well-recognized evidence of discrimination. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977) (stating that "[t]he specific sequence of events leading up to the challenged decision" may be probative of discriminatory intent); *Dailey v. City of Lawton, Okl.*, 425 F.2d 1037, 1040 (10th Cir. 1970) (finding that the City discriminated against Plaintiff in denying their rezoning application because the City approved similar rezoning requests and it was recommended by the commission for approval); *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty., Maryland,* 915 F.3d 256, 262–63 (4th Cir. 2019) (stating that departures from normal procedures can suggest that the decision was based on unlawful motives, particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached); *Chabad Lubavitch*, 768 F.3d at 199 (stating that factors relevant to discrimination include whether the decision or decisionmaking process departed from established norms and whether less discriminatory avenues were available.); *Islamic Socy. of Basking Ridge v. Township of Bernards*, 226 F. Supp. 3d 320, 349 (D.N.J. 2016) (finding a violation of RLUIPA's nondiscrimination provision where Defendants applied a parking ordinance more favorably to Christian churches than to the plaintiff mosque).

In *Jesus Christ Is the Ans. Ministries*, the Fourth Circuit found that the church successfully pled discrimination against Baltimore County for its denial of a land use permit after County staff had recommended the permit for approval. 915 F.3d at 263. In particular, "the fact that the Board disagreed with a County official who has relevant expertise and a formal role as the Board's advisor is enough to raise a plausible suspicion of improper motive." *Id*. at 264-65. The Court also found the fact that the deviation came after neighbors made bigoted remarks at the hearing "highly probative" of discrimination. *Id*. at 263-64.

The factors here mirror and exceed those present in *Jesus Christ Is the Ans. Ministries.* Both the Planning Staff and Planning Commission recommended approval of IST's applications. Dkt. 2 at ¶ 52, 62. The hearing was plagued by bigoted, anti-Muslim remarks by neighbors. *Id.* at ¶ 83. Following those remarks, the Council deviated from the recommendations of its staff and denied the applications in full. *Id.* at ¶ 88.

Not only are these facts strong evidence of discrimination—they are well-pleaded. Dkt. 27 at 20. For example, in support of its allegation that the City departed from normal decisionmaking processes, IST stated that 1) the City Council decided the two applications in one vote contrary to the requirements of the zoning ordinance, Dkt 2. at ¶ 86; 2) the City Council required a level of detailed engineering that it did not require for other applicants, ¶ 114-16; and 3) the City Council deviated from the Planning Commission's recommendations without explanation, ¶ 87. Further, in support of its allegation that the City Council treated IST less favorably than Christian applicants, IST stated that 1) the City Council approved several similar applications for Christian Churches, *Id.* at 26-29; and 2) there are at least five Christian churches operating within a three-mile radius of the Subject Property, but there is not a single mosque in Broken Arrow, *Id.* at ¶ 112. In support of its assertion that certain Councilors displayed anti-Muslim animus, IST quoted multiple emails from councilors making anti-Muslim statements regarding IST's applications. *Id.* at 19-20.

Defendant attempts to characterize the discrimination claims as hinging primarily on the anti-Muslim emails by the Councilors. *See* Dkt. 27, p. 19. However, the statements by councilors agreeing that Muslims are violent and seek to take over the country are but one piece of the discrimination puzzle. Defendant has failed to explain why the many allegations pled by IST do not raise an inference that the City acted, at least in part, due to discrimination.

The Court should thus not dismiss Counts II (RLUIPA Nondiscrimination Provision), IV (Free Exercise), and VI (Equal Protection Clause).

## II. IST Has Sufficiently Alleged That the City's Decision Placed a Substantial Burden on IST's Religious Exercise in Violation of RLUIPA and OFRA.

IST has adequately alleged that Defendant's complete prohibition on IST's ability to use their property as a mosque constitutes a substantial burden on their religious exercise in violation of both RLUIPA and OFRA.[1] Under RLUIPA's substantial burden provision, the government may not impose or implement a land use regulation in a manner that imposes a substantial burden on one's religious exercise unless the imposition of the burden is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc. Unlike the Free Exercise Clause, RLUIPA's test applies to all laws passed by state and local governments, including neutral rules of general applicability. *Cutter v. Wilkinson*, 544 U.S. 709, 732 (2005) (Thomas, C., concurring). The test under OFRA is the same. Okla. Stat. 51, § 253 ("no governmental entity shall substantially burden a person's free exercise of religion, even if the burden results from a rule of general applicability, unless the governmental entity demonstrates that application of the burden is essential to further a compelling government interest and is the least restrictive means of furthering that interest").

In challenging IST's substantial burden claims, Defendant does not argue that Defendant's actions did not cause the alleged burden, or that the burden is not on religious exercise. Dkt. 27, p. 26. Rather, Defendant argues that the burden imposed by the City, which includes a complete block on IST's ability to use its land for Islamic services, is simply not substantial. Defendant is wrong.

---

[1] Defendant analyzes the substantial burden claims of RLUIPA, OFRA, and the Free Exercise Clause jointly. Plaintiff addresses the Free Exercise claim separately because the tests vary.

**A. The burden Defendant is imposing on IST is substantial.**

Contrary to what Defendant asserts, the burden that Defendant is imposing on IST is substantial. *See* 42 U.S.C. § 2000cc–5(7)(B). The City denied both IST's rezoning and CUP applications, meaning that IST is prohibited from using their land for Islamic congregation and services. They are not allowed to assemble for Islamic worship or services on the property. Dkt. 22 at ¶ 119. Nor are they allowed to conduct religious education or community events. *Id*. Because Broken Arrow does not have a single mosque, the City's actions have restricted IST's ability to serve its religious community and congregate in Broken Arrow. With IST's only other mosque at capacity, members have been forced to miss religious services. *Id*. at ¶ 120. Moreover, the denial was absolute as opposed to conditional, leaving IST with no possibility of using their land for its intended religious use. *Id*. at ¶ 117. The City's actions have left IST with land that it cannot use to practice its religion and have left Broken Arrow without a single mosque for Muslim residents.

RLUIPA case law is clear that each of these facts supports a finding of a substantial burden. *See Roman Catholic Archdiocese of Kansas City in Kansas v. City of Mission Woods*, 337 F. Supp. 3d 1122, 1138 (D. Kan. 2018) (stating that a substantial burden may be shown where a plaintiff church alleges that it has "outgrown its current facilities"); *Anash, Inc. v. Borough of Kingston*, 184 F.4th 214, 239–40 (3d Cir. 2026) (stating that a land use regulation – even one of general applicability – imposes a substantial burden if it limits the *use* of real property that is otherwise available for the proposed exercise of religion) (emphasis in original); *Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005) (city's denial of a church's rezoning permit constituted a substantial burden under RLUIPA where reapplication or the search for an alternative property would have caused

"delay, uncertainty, and expense."); *Westchester Day Sch. v. Village of Mamaroneck,* 504 F.3d 338 (2d Cir. 2007) (zoning board's final denial of religious school's use permit substantially burdened school's religious exercise under RLUIPA since school had no viable alternative to achieve its objectives); *Fortress Bible Church v. Feiner*, 694 F.3d 208, 220 (2d Cir. 2012) (actions of municipality substantially burdened church's religious practice under RLUIPA where church's current facilities were inadequate to accommodate its religious practice); *U.S. v. Cnty. of Culpeper, Virginia*, 245 F. Supp. 3d 758, 769 (W.D. Va. 2017) (county's denial of permit requested by Islamic organization imposed a substantial burden under RLUIPA where it prevented the organization's members from constructing a mosque even if organization had other options); *U.S. v. City of Troy*, 592 F. Supp. 3d 591, 609 (E.D. Mich. 2022) (city imposed a substantial burden on Islamic group under RLUIPA where the building the group was using was unsuitable for its current and future needs).

For example, the District Court in *City of Mission Woods*, stated that a substantial burden under RLUIPA is established where the plaintiff had a need to expand or relocate, and the defendant inhibited their ability to do so. 337 F. Supp. 3d at 1136. Additionally, in *Bethel*, the Fourth Circuit explained that "[w]hen a religious organization buys property reasonably expecting to build a church, governmental action impeding the building of that church may impose a substantial burden." *Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 557 (4th Cir. 2013). And as the Seventh Circuit explained in *Petra*, "once the organization has bought property reasonably expecting to obtain a permit, the denial of the permit may inflict a hardship on it." *Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 851 (7th Cir.2007). The burden placed on IST meets each of these tests for substantial burden under RLUIPA.

Nonetheless, Defendant claims that the denial of IST's application does not substantially burden their religious exercise because "the subject property lacks any particular religious significance of its own" and "there is no allegation regarding the unavailability of other sites." Dkt. 27 at 26. However, RLUIPA's substantial burden provision does not require that the property at issue have a "religious significance of its own." Nor does the provision require that no other site be available for religious use, as "a 'substantial burden' need not be a complete or total one." *Yellowbear v. Lampert*, 741 F.3d 48, 55 (10th Cir. 2014) (denying defendant's motion to dismiss a RLUIPA claim where a reasonable fact finder could find that plaintiff was substantially burdened by the denial of his access to a religious meditation room). Indeed, courts have confirmed that a religious group need not "show that there was no other parcel of land on which it could build its church" to show a substantial burden under RLUIPA. *Saints Constantine,* 396 F.3d at 899–900.

Defendant relies on *Lyng* in arguing that the City's burden on IST is not substantial. *Lyng* involved a Free Exercise challenge (not a RLUIPA challenge) to the government's construction of a road through federally owned land that Native American tribes used for religious purposes. *Lyng v. N.W. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 441 (1988). The Court held that the "incidental effects" of otherwise lawful government programs "which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" do not constitute substantial burdens on the exercise of religion. *Id.* at 450-451; *Thiry v. Carlson*, 78 F.3d 1491, 1495 (10th Cir. 1996). As the Supreme Court explained in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, the ruling in *Lyng* hinged on the fact that the government action was "neutral and generally applicable without regard to religion." 582 U.S. 449, 460 (2017). A substantial burden

challenge under RLUIPA, however, does not consider whether the action is generally applicable. Rather, the question is whether the defendants' actions placed a substantial burden on religious exercise, which under the plain language of the statute, includes "[t]he use, building, or conversion of real property for the purpose of religious exercise." 42 U.S.C. § 2000cc–5(7)(B).

Nonetheless, the burden placed on the plaintiffs in *Lyng* is clearly distinct from the present case, because the plaintiffs in *Lyng* challenged the government's construction on *public* land, not land owned by the plaintiffs. *Lyng*, 485 U.S. at 453 ("[w]hatever rights the Indians may have to the use of the area, however, those rights do not divest the Government of its right to use what is, after all, *its* land.") (emphasis in original). Certainly, the burden placed on a religious group by preventing the religious use of its own land, which it purchased for that religious use, is more substantial than that placed on those who have been forced to share government land with the government. The RLUIPA case law clearly recognizes the type of burden that the City imposed on IST as substantial. Defendant's misguided focus on Free Exercise jurisprudence cannot overcome that.

**B. Defendant's actions do not survive strict scrutiny.**

Because Defendant placed a substantial burden on IST's religious exercise, Defendant must show that its actions were the least restrictive means of advancing a compelling state interest—a burden it does not meet or even meaningfully address in its Motion to Dismiss. 42 U.S.C. §§ 2000cc-1(a)(1)-(2); Okla. Stat. 51, § 253; *Rocky Mt. Christian Church v. Bd. of Cnty. Com'rs of Boulder Cnty.*, 612 F. Supp. 2d 1163, 1174 (D. Colo. 2009) ("[t]he affirmative defense codified at § 2000cc(a) replicates the strict scrutiny standard of constitutional law").

Compelling state interests are "interests of the highest order." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 546, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). To prove that an interest is compelling, the government must show that when it made its decision, it possessed evidence, "and not mere speculation" that plaintiffs' action would harm that interest. *City of Mission Woods*, 337 F. Supp. 3d at 1137. In the context of zoning, a city must do more than show a general interest in "enforcing zoning regulations and ensuring residents' safety through traffic regulations." *Westchester Day Sch. v. Village of Mamaroneck,* 504 F.3d 338, 353 (2d Cir. 2007). Rather, the city must show a compelling interest in imposing the burden on religious exercise in the particular case at hand. *Id*. (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 432, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006)).

As an initial matter, discrimination is not a compelling government interest, and the fact that the City acted with a discriminatory purpose forecloses a finding that the City's actions survive strict scrutiny. Discrimination aside, the government's proffered reason for denying IST's applications, traffic, flooding, and infrastructure concerns, are not compelling interests to the case at hand.

First, general traffic concerns and consistency with the comprehensive plan are not usually considered compelling state interests. *Rocky Mt. Christian Church,* 612 F.Supp.2d at 1175 (holding that, under RLUIPA, traffic safety is not a compelling governmental interest that can justify imposing a substantial burden on a religious institution); *Knutson v. City of Oklahoma City*, 402 F. Supp. 3d 1266, 1276 (W.D. Okla. 2019) (noting that a municipality's asserted interests in traffic safety and aesthetics have never been held to be compelling); *Quinly v. City of Prairie Village, Kan.*, 446 F. Supp. 2d 1233, 1240 (D. Kan. 2006) (noting that "courts

have been reluctant to find compelling a municipality's interest in traffic safety as a basis to uphold content-based sign regulations"); *Clark v. City of Williamsburg, Kansas*, 388 F. Supp. 3d 1346, 1361 (D. Kan. 2019), aff'd, 844 Fed. Appx. 4 (10th Cir. 2021) (unpublished) ("[g]iven that traffic safety is generally not viewed as a compelling governmental interest, the City's generalized concern about limiting 'potential hazard[s]' is likely as equally uncompelling."); *Anchor Stone Christian Church v. City of Santa Ana*, 777 F. Supp. 3d 1126, 1152 (C.D. Cal. 2025) (finding that the City's interest in being able to zone and control land uses is too broadly formulated to constitute a compelling government interest).

This is especially true where the proffered interest is unsupported by the record. In *City of Mission Woods*, for example, the Court found that Kansas City did not have a compelling interest in regulating traffic congestion because the "plaintiffs assured defendant that they would prevent that from happening." 337 F. Supp. 3d at 1140. The same is true here. IST routinely assured the City that it would work with the City at the engineering phase to mitigate traffic and flooding concerns, that traffic volumes were well below capacity, that they would stagger start times, and that they would accept conditions as necessary. Dkt. 2 at ¶ 58, 78, 80, 85. With these assurances, the City had no genuine concern over traffic or public safety with regard to the Subject Property. To the extent that traffic was an honest concern of the City's, Defendant has not shown that such interest is of the "highest order." *Lukumi Babalu,* 508 U.S. at 546. Nor has the City demonstrated a compelling reason in denying IST's applications on the basis of traffic and infrastructure concerns, all while approving secular applications with the same concerns. *See Anchor Stone*, 777 F. Supp. 3d at 1153 (stating that the Court was "hard-pressed to find" a compelling state interest in denying plaintiff's CUP application but approving a Christian church's application the year earlier).

Furthermore, any interest the City had in regulating traffic and land use was generalized and not particular to the Subject Property. *See Westchester,* 504 F.3d at 353. The fact that the City Staff recommended the applications for approval confirms that the City had no legitimate concern over traffic, flooding, or infrastructure on the Subject Property. Thus, even ignoring the evidence of discrimination, the City has provided no compelling interest for its denial of IST's applications.

Finally, even if the City had a compelling interest regarding traffic or flooding concerns, it did not employ the least restrictive means of furthering that interest. When a government claims to have used the least restrictive means to achieve a compelling interest, it must show that any alternatives suggested by plaintiffs are ineffective to achieve its goals. *City of Mission Woods*, 337 F. Supp. 3d at 1137 (citing *Yellowbear*, 741 F.3d at 62–63); *see also U.S. v. Wilgu*s, 638 F.3d 1274, 1289 (10th Cir. 2011) (stating that the government "must refute the alternative schemes offered by the challenger, but it must do both through the evidence presented in the record."). Simply asserting that plaintiffs' alternative measures are ineffective will not suffice. *Yellowbear*, 741 F.3d at 63 ("the government's burden here isn't to *mull* the claimant's proposed alternatives, it is to *demonstrate* the claimant's alternatives are ineffective to achieve the government's stated goals.") (emphasis in original).

Here, the City had various alternative, less restrictive means of mitigating traffic, flooding, or infrastructure concerns, and at no point did it identify why those measures were inadequate. City staff and engineers routinely advised the Council that any traffic, access, parking, floodplain, and other infrastructure matters would be addressed through later review stages and continued City oversight. Dkt. 2 at ¶ 52, 53, 78, 80. The City also could have sent the applications back to the Planning Commission for further analysis to address any

legitimate concerns. Dkt. 2 at ¶ 29. In fact, the City had imposed those less restrictive means on several other non-Muslim applicants, including Aspen Creek and Aequitas, showing that those alternatives were entirely feasible. *Id*. at ¶ 130-33. Instead, it denied both applications in full without explaining why those less restrictive measures would be inadequate. The denial was therefore not the least restrictive means of furthering any supposed governmental interest.

IST has at minimum alleged sufficient facts to support an inference that the City imposed a substantial burden on IST's religious exercise, and that such action was not the least restrictive means of furthering a compelling state interest. Counts III (RLUIPA Substantial Burden Provision) and VII (OFRA) should thus not be dismissed.

## III. IST Has Sufficiently Alleged That the City's Decision Violated the Free Exercise Clause.

IST has adequately alleged that the Defendant's actions placed a substantial burden on its religious exercise, in violation of the Free Exercise Clause, when Defendant applied its Zoning Ordinance in a manner motivated by religion. "The principle that government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief is essential to the protection of the rights guaranteed by the Free Exercise Clause." *Lukumi Babalu*, 508 U.S. at 543. The Free Exercise Clause prohibits the government from substantially burdening religious exercise through laws or governmental actions that are not 1) neutral and 2) generally applicable. *Id*. If a law that burdens a religious practice is not neutral or generally applicable, it is subject to strict scrutiny, and the burden violates the Free Exercise Clause unless it survives strict scrutiny. *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1294 (10th Cir. 2004).

"A law is not generally applicable when it imposes 'burdens only on conduct motivated by religious belief.'" *Church v. Polis*, No. 20-1391, 2022 WL 200661, at *8 (10th Cir. Jan. 24,

2022) (citing *Lukumi Babalu*, 508 U.S. at 543). For instance, in *Lukumi Babalu*, city ordinances prohibiting animal sacrifice but allowing the killing of animals in a variety of other contexts were not generally applicable because they furthered the city's governmental interests "only against conduct motivated by religious belief." 508 U.S. at 543, 545. Additionally, a rule that is discriminatorily motivated or applied is not a neutral rule of general applicability. *Axson-Flynn*, 356 F.3d at 1294. A violation of the Free Exercise Clause can thus be established by showing that the application of the law burdens only religious conduct or is discriminatorily motivated. *See Polis,* 2022 WL 200661 at *8.

Here, the City applied the Broken Arrow Zoning Ordinance in a manner motivated by religious belief when it denied IST's applications because of its identity as an Islamic group. This is most apparent in the City's differential treatment of Christian applicants. The City approved nearly identical applications for Harvest Church and Church on the Move despite similar concerns raised at each hearing. *Id.* at ¶ 108-112. While the City of Broken Arrow has dozens of Christian churches, it has not a single mosque. *Id.* at ¶ 112. Defendant applied the Zoning Ordinance in a manner that burdens only Islamic conduct. *See Lukumi Babalu*, 508 U.S. at 543. The City's regular approval of similar secular applications further demonstrates that the application of the Zoning Ordinance is directed at Islam.

The City also applied the Zoning Ordinance in a discriminatory manner against IST. For all of the reasons outlined above*, see* section I, and those detailed in IST's complaint, *see* Dkt. 2 at 36-41, there is sufficient evidence to find that the Defendant imposed a substantial burden on IST because they were Muslims seeking to use their land for an Islamic purpose. For the reasons explained above, *see* section II(B), the City's actions fail strict scrutiny. Count IV (the Free Exercise Clause) should not be dismissed.

## IV. IST Has Sufficiently Alleged That the City Applied the Zoning Ordinance in a Manner that Violated the Establishment Clause.

IST has sufficiently alleged that the City's denial of their Islamic group's application while routinely approving Christian groups' applications violated the Establishment Clause. "The clearest command of the Establishment Clause is that the government may not officially prefer one religious denomination over another. *Catholic Charities Bureau, Inc. v. Wisconsin Lab. & Indus. Rev. Comm'n*, 605 U.S. 238, 247 (2025) (*quoting Larson v. Valente*, 456 U.S. 228, 244, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982)) (internal quotation marks omitted). To survive a claim of denominational preference in violation of the Establishment Clause, the government bears the burden to show that the relevant law, or application thereof, is closely fitted to further a compelling governmental interest. *Id.* at 248.

Defendant argues that IST's Establishment Clause claim fails because strict scrutiny is not triggered by Defendant's discriminatory application of the Zoning Ordinance to create a denominational preference for Christianity. Dkt 27 at 16 ("strict scrutiny cannot be triggered under the "denominational preference" doctrine based solely on a municipality's denial of a land use application pursuant to a facially neutral zoning ordinance."). In particular, Defendant takes the position that "denominational preference" cases under the Establishment Clause only trigger strict scrutiny when the law is challenged on its face. *Id*. This is wrong. Not only is strict scrutiny triggered by Defendant's favorable treatment towards Christian churches, but Defendant's actions do not survive such scrutiny.

In *Bowen v. Kendrick*, the Supreme Court upheld the validity of the Adolescent Family Life Act, which authorized federal grants to organizations for services and research regarding premarital sexual relations and pregnancy. 487 U.S. 589, 108 S. Ct. 2562, 101 L. Ed. 2d 520 (1988). The Court found that the Act was not a violation of the Establishment Clause on its

face. However, the Court remanded the case for further consideration of whether the statute, "as applied," violated the Establishment Clause. *Id*. at 618. In particular, the Court instructed the district court on remand to consider the claim that the Secretary of Health and Human Services, who was charged with administering the program, was making grants under the Act in a manner that violated the Establishment Clause. *Id*. at 620. ("we feel that this lawsuit should be remanded to the District Court for consideration of the evidence presented by appellees insofar as it sheds light on the *manner* in which the statute is presently being *administered*.") (emphasis added). Thus, *Kendrick* stands for the proposition that a law that does not violate the Establishment Clause on its face may nonetheless be applied in a manner that violates the Clause, specifically where the application favors the view of a particular faith. *See Kendrick v. Sullivan*, 125 F.R.D. 1, 2 (D.D.C. 1989) ("[i]n Kendrick, the Supreme Court held that while the AFLA is not unconstitutional on its face, further analysis is required before a determination can be made as to whether the AFLA is being administered in an unconstitutional fashion.").

Since *Kendrick*, various courts have acknowledged the viability of as-applied challenges under the Establishment Clause. *See Satanic Temple, Inc. v. City of Boston*, 111 F.4th 156, 174 (1st Cir. 2024) ("[t]hough Boston's practice is constitutional on its face, it is still possible that in practice it has led to Boston favoring some religions over others[.]"); *Croft v. Perry*, 624 F.3d 157, 163 (5th Cir. 2010) ("[b]oth we and the Supreme Court have recognized the difference between facial and as-applied Establishment Clause challenges."); *Sherman v. Quinn*, 735 F. Supp. 2d 1035, 1041 (C.D. Ill. 2010) (remanding to the District Court for consideration of whether government grants are being made in violation of the Establishment Clause). In *Williamson v. Brevard Cnty*., for example, the Eleventh Circuit sustained a violation of the

Establishment Clause where the Board of County Commissioners exercised "plenary discretion" in exercising its procedures for inviting speakers to give invocations, "which they have used to discriminate on the basis of religious beliefs," favoring some religions over others. 928 F.3d 1296, 1310 (11th Cir. 2019).

The City Defendant nonetheless cites *Catholic Charities* to support its claim that, so long as a law is facially neutral, it cannot violate the Establishment Clause. However, *Catholic Charities* itself involved an as-applied violation of the Establishment Clause. *See Cath. Charities Bureau, Inc. v. Wisc. Lab. & Indus. Rev. Comm'n*, 605 U.S. 238, 249 (2025). There, Catholic Charities sought an exemption from paying unemployment compensation taxes under Wisconsin law. *Id*. The Wisconsin Supreme Court denied Catholic Charities' exemption request, holding that petitioners were not "operated primarily for religious purposes" because they didn't engage in proselytization or limit charitable services to Catholics. *Id*. at 249. The Supreme Court found that, as applied by the Wisconsin Supreme Court, the Wisconsin law imposed a denominational preference by differentiating between religions. Specifically, the Court stated, "[t]he question here is whether § 108.02(15)(h)(2), *as applied to petitioners* by the Wisconsin Supreme Court, violates the First Amendment. The Court holds that it does." *Id.* at 241. (emphasis added). It was the Wisconsin Supreme Court's interpretation and application of the law at issue that violated the Establishment Clause. *See Dunn v. Solomon Found.*, 723 S.W.3d 711, 732 (Ky. 2025) ("[t]he question presented in *Catholic Charities* was whether the denial of an exemption from unemployment compensation taxes violated the First Amendment.").

While the Broken Arrow Zoning Ordinance does not, on its face, create a denominational preference, the City nonetheless executed that ordinance in a manner that

routinely and intentionally established a preference of Christianity. The City approved Harvest Church's request to rezone property from Agricultural to Commercial General and later approved its application to use that property as a Christian place of assembly and worship, but denied the same applications by IST, a Muslim group. Dkt 2 at ¶ 102-107. The City approved Harvest Church's rezoning despite its future commercial component but later cited IST's future commercial phase as a reason for denying IST's applications. The City also voted to approve Church on the Move's application to expand its Christian place of assembly use, but voted to deny IST's conditional use permit for an Islamic place of assembly. *Id*. at ¶ 108-112. While the City has dozens of Christian churches, it has not a single mosque. *Id*. at ¶ 112.

Defendant is using its zoning authority to prevent the existence of mosques in Broken Arrow. Defendant's denominational preference favoring Christianity over Islam is a violation of the Establishment Clause's "clearest command"—to not prefer one religious denomination over another. *Larson*, 456 U.S. at 244. Count V (the Establishment Clause) should not be dismissed.

## V. IST Has Sufficiently Alleged That the City Violated RLUIPA's Equal Terms Provision.

IST has alleged sufficient facts supporting a plausible inference that the City's decision violated RLUIPA's Equal Terms Provision when it treated various secular entities on more favorable terms than IST. RLUIPA forbids a government from "impos[ing] or implement[ing] a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). In support of its Equal Terms claim, IST identified four secular comparators—Aspen Creek Villas, Aequitas, the Villas at Battle Creek, and Oneta 71. Each secular entity involved similar zoning

districts, applications, traffic concerns, and impact on the surrounding land use. Dkt 2 at 25-26, 29-31. Nonetheless, the City approved each secular entity's applications while denying IST's. These allegations are more than sufficient to plead a violation of the Equal Terms provision.

**A. The identified secular entities are similarly situated comparators for purposes of the Equal Terms Provision.**

Defendants argue that the Equal Terms claim should be dismissed because none of the secular comparators—residential developments—identified by IST constitute similarly situated comparators for purposes of RLUIPA. RLUIPA does not define "nonreligious assembly or institution" as used in the Equal Terms provision, and the Tenth Circuit has not sought to define the parameters of the provision with particularity. However, the provision mirrors the requirements of the Equal Protection Clause. *See Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 264 (3d Cir. 2007) ("[i]t is undisputed that, when drafting the Equal Terms provision, Congress intended to codify the existing jurisprudence interpreting the Free Exercise Clause."); *see also* 146 Cong. Rec. S7774 (July 27, 2000) (Senate Sponsors' statement) (stating that RLUIPA sections 2(b)(1) (equal terms) and (b)(2) (nondiscrimination) "enforce the Free Exercise rule against laws that burden religion and are not neutral and generally applicable").

Here, IST has identified four secular entities. Three are residential development corporations, and one (Oneta 71) is a future commercial development. Each of these developments have similar and more severe impact on traffic, flooding, and the overall city than IST's mosque application. Dkt. 2 at ¶ 93. The same concerns were raised for each application. *Id.* at ¶ 96 (noting traffic concerns raised at the City Council hearing for Aspen Creek Villa's application); ¶ 100 (noting that portions of the Aequitas property was in a flood

zone); ¶ 93; (noting residents' concerns over traffic in regard to the Villas at Battle Creek); ¶ 115 (noting traffic lighting, stormwater, and flooding concerns over the Oneta 71 property). Each application was analyzed in light of the goals and limits of the zoning district. Despite the similarities, the same city councilors approved all four secular companies' applications and denied IST's. *Id.* at ¶ 116. This is the exact type of differential treatment against religious entities that the Equal Terms provision sought to prohibit.

Nonetheless, Defendant argues these developments are not valid comparators because they do not fit within the textbook definition of "assembly or institution." Dkt 27 at 16. In doing so, Defendant urges this Court to adopt the Eleventh Circuit's reading of the Equal Terms Provision, a reading that only that Circuit has adopted and which has been criticized by other Circuits as overly textual. *See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1230–31 (11th Cir.2004). That reading requires that a secular comparator meet the dictionary definition of an "assembly or institution" to be considered a similarly situated comparator. *Id.*

The Seventh Circuit Court criticized the Eleventh Circuit's approach in *River of Life Kingdom Ministries v. Village of Hazel Crest, Ill*, stating "[w]e are troubled by the Eleventh Circuit's rule that mere 'differential treatment' between a church and some other 'company of persons collected together in one place ... usually for some common purpose' (the court's preferred dictionary definition of 'assembly') violates the equal-terms provision." 611 F.3d 367, 370 (7th Cir. 2010). Adopting its own approach, the Seventh Circuit determined that a comparator is similarly situated for purposes of RLUIPA if the two entities are similar with respect to the zoning criteria. *Id.* The Third Circuit adopted its own approach in *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 264 (3d Cir. 2007). There, the Court applied Free Exercise jurisprudence to the Equal Terms Provision stating, "whether a

regulation violates a plaintiff's constitutional rights hinges on a comparison of how it treats entities or behavior that have the same effect on its objectives." *Id*. The Court concluded, "a religious plaintiff under the Equal Terms Provision must identify a better-treated secular comparator that is similarly situated in regard to the objectives of the challenged regulation." *Id*. at 268.

In the absence of a Tenth Circuit test of its own, courts have looked to Equal Protection jurisprudence in determining comparators. In *Rocky Mt. Christian Church*, for example, the District Court stated that "RLUIPA's requirement that similarly situated religious and non-religious assemblies or institutions be treated equally does not expand on the requirements of the religion clauses of the First Amendment or the Equal Protection Clause." 612 F. Supp. 2d at 1188. "Rather, the RLUIPA's requirement of equal treatment essentially parrots the requirements of the religion clauses and the Equal Protection Clause, as they are applied to religion." *Id*. On appeal, the Tenth Circuit reviewed the Equal Terms claim, focusing not on whether the secular comparator was defined as an "assembly or institution," but whether the project sought by the entity was comparable in size and impact to that of the religious entity. *Rocky Mt. Christian Church v. Bd. of Cnty. Com'rs*, 613 F.3d 1229, 1236 (10th Cir. 2010). The court considered the size of the two projects, the increase in population caused by each project, and whether both entities were located in the same zoning district. *Id*. at 1236-37.

Precedent indicates that the Court should look to the impact of the secular entity. Under this framework, the identified comparators, which are similar in zoning, size, and impact, are similarly situated comparators for purposes of the Equal Terms provision.

**B. Even under the Eleventh Circuit test, the Equal Terms claim survives.**

Nonetheless, even if this Court were to adopt the Eleventh Circuit's interpretation of the Equal Terms provision, the alleged facts meet that test because the comparators are

assemblies or institutions. An "institution," is defined by Webster's Dictionary as "an established society or corporation (such as a bank or university) especially of a public character." First, Oneta 71 is a future commercial development, indicating that it will include businesses and/or event spaces. Dkt. 2 at ¶ 115. The remaining comparators are residential developments owned and operated by corporations. *Id.* at ¶ 14. Such developments often consist of Homeowners' Associations (HOA) or other community groups; host community events or are available for private events; and include gyms, pools, and recreational centers. They are places where people live and gather. To exclude residential developments as possible comparators for the purposes of the Equal Terms Provision would be to allow a city to routinely allow the development of large, communal residential communities all while denying a religious group's ability to similarly assemble. Given the similar impacts they have on the surrounding properties, Aspen Creek Villas, Aequitas, Oneta 71, and the Villas at Battle Creek are all assemblies or institutions within the meaning of RLUIPA.

However, should the Court determine that there is insufficient information to find that the identified comparators meet the definition of assembly or institution, the motion to dismiss should be denied for further factual investigation. The question of whether these commercial and residential developments constitute an assembly or institution within the meaning of RLUIPA is a mixed question of fact and law, and consequently, dismissal before discovery is not appropriate. *Othart Dairy Farms, LLC v. Dairy Farmers of Am., Inc.*, 720 F. Supp. 3d 1087, 1102 (D.N.M. 2024) (mixed questions of fact and law are premature at the motion to dismiss stage); *Viviani v. Coffey & Assocs., Inc.*, Case No. CIV-22-00090-PRW, 2023 WL 2432026, at *5 n.31 (W.D. Okla. Mar. 9, 2023) (declining to decide whether fiduciary duty existed at motion to dismiss stage because "whether a fiduciary duty exists is in part a question

of fact"); *Chabad of Nova, Inc. v. City of Cooper City*, No. 07-60738-CIV, 2007 WL 9700874, at *11 (S.D. Fla. Oct. 15, 2007) ("whether day care centers, as defined by the COO, are assemblies is a mixed question of fact and law, and consequently, the question not appropriate for resolution on a motion to dismiss.").

Additional evidence may show that the identified comparators intend to or have included event spaces, gyms, meeting spaces, clubs, associations, or corporate meetings. Dismissal on the basis that the identified comparators do not meet the definition of assemblies or institutions is thus improper.

**C. Additional places of assembly are viable comparators even under the most narrow reading of the provision.**

Finally, should the Court find that the identified comparators are not similarly situated secular entities, several other properties in Broken Arrow serve as valid comparators, and the Court is authorized to take judicial notice of their existence and operations. *See Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp. 3d 1292, 1301 (D.N.M. 2018) (in resolving a motion to dismiss the Court may consider documents of which the Court may take judicial notice); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web."). The following facts are found on each property's official website, and the Court may consider them in addition to the pleadings.

Roughly 0.3 miles across the road from the Subject Property is the Property Event Center, a venue and event space operating in the AG district.[2] Additionally, about 0.3 miles southwest of the Subject Property is the Kyle Ingram PGA Golf Academy, which sits on the

[2] The Property Event Center, https://www.thepropertyeventcenter.com/ (last visited October 30, 2026).

Lit'l Links Golf Club.[3] The Academy is one of the largest adult and junior golf schools in the U.S. The Club also hosts private events. About 2.5 miles northeast of the Subject Property is the Tulsa Ballet Hardesty Center for Dance Education, a ballet school and performance venue in the CG district.[4] About 2 miles east of the Subject Property is the Regal Warren Broken Arrow, a cinema with regular film showtimes.[5]

While there is no public information regarding the permits or applications sought by each property, each is operating as a place of assembly in Broken Arrow. All of these properties fall into even the most narrow definition of assemblies or institutions. The City has permitted all of these places of assembly to operate in the same area and/or district without issue, but prevented IST from doing so. The City's mere allowance of these secular entities to operate in the same district in which it denied IST's ability to operate a mosque is sufficient to allege an Equal Terms violation.

IST has sufficiently alleged an Equal Terms violation on the basis of the City's differential treatment towards IST, and Count II (the Equal Terms Provision) should not be dismissed.

**VI. IST Has Sufficiently Alleged That the City's Decision Violated the Equal Protection Clause.**

IST has alleged sufficient facts supporting a plausible inference that the City's decision violated the Equal Protection Clause. "Equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'" *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). To establish a violation of the

---

[3] Lit'l Links Golf Club, *PGA Instructor,* https://litllinks.com/pga-instructor/ (last visited October 30, 2026).
[4] Tulsa Ballet, *Classes*, https://tulsaballet.org/classes/ (last visited October 30, 2026).
[5] Regal, *Regal Warren Broken Arrow*, https://www.regmovies.com/theatres/regal-warren-broken-arrow-1448 (last visited October 30, 2026).

Equal Protection Clause, a plaintiff must first show that the state engaged in intentional discrimination in a manner that harmed the plaintiff. *Poe v. Drummond*, 697 F. Supp. 3d 1238, 1248–49 (N.D. Okla. 2023), aff'd sub nom. *Poe by and through Poe v. Drummond*, 149 F.4th 1107 (10th Cir. 2025) (citing *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021). "The 'intent to discriminate' forbidden under the Equal Protection Clause is merely the intent to treat differently." *Fowler v. Stitt*, 104 F.4th 770, 784 (10th Cir. 2024), cert. granted, judgment vacated, 145 S. Ct. 2840 (2025) (citing *Colo. Christian Univ. v. Weaver*, 534 F.3d 1245, 1260 (10th Cir. 2008).

Intent can be established by either direct or circumstantial evidence. *Poe,* 697 F. Supp. 3d at 1248–49. Circumstantial evidence may include the sequence of events preceding the decision, departures from ordinary procedures, substantive departures from the factors ordinarily considered important, and contemporary statements. *Village of Arlington Heights*, 429 U.S. at 564-65. Unlike RLUIPA's Equal Terms Provision, the Equal Protection Clause does not require that the similarly situated comparators be a "nonreligious assembly or institution." Thus, a violation of the Equal Protection Clause may be shown by differential treatment towards a broad range of secular entities as well as religious institutions of a different denomination.

Here, as described in detail above, *see* section I, at least two councilors made anti-Islam statements specifically in regard to IST's applications. Dkt. 2 at ¶ 75, 76. Those emails are direct evidence that the City Council denied IST's applications on account of their Muslim faith. Beyond the direct evidence of discrimination, the City's differential treatment of IST in comparison to secular and Christian entities is strong circumstantial evidence of discrimination. *See SECSYS, LLC v. Vigil,* 666 F.3d 678, 689 (10th Cir. 2012) (circumstantial

evidence includes the fact that adverse treatment "was such a stark outlier from an otherwise consistent pattern of favorable treatment in similarly situated cases."); *Johnson v. U. of Oklahoma*, No. CIV-24-495-PRW, 2026 WL 2884709, at *4 (W.D. Okla. Sept. 25, 2026) (circumstantial of discrimination includes evidence of differential treatment from similarly situated persons).

The City approved at least four secular entities' rezoning or CUP applications in the year and a half surrounding their denial of IST's applications. Dkt. 2 at 24-31. The City approved those applications despite similar or more severe concerns about traffic, infrastructure, or flooding. The City also approved several similar applications for Christian churches, as explained above, *see* section IV. In fact, the City approved the same exact set of requests—rezoning from AG to CG and a CUP for a place of assembly—for a Christian church just file miles down the road from the Subject Property. *Id.* at ¶ 102-07. These allegations demonstrate that the City treated IST differently than similarly situated entities and did so on the basis of religion. *See Johnson*, 2026 WL 2884709, at *4.

Where, as here, the alleged discrimination involves (1) a deprivation of free exercise, a fundamental right and (2) a religious classification, which is suspect, strict scrutiny applies. *Ashaheed v. Currington*, 7 F.4th 1236, 1251 (10th Cir. 2021). For the reasons explained above, *see* section II(B), Defendant's actions do not survive such scrutiny. Count VI (the Equal Protection Clause) should thus not be dismissed.

## VII. IST's OFRA Claim against the City is Not Subject to the Notice or Immunity Provisions of the GTCA.

Defendant urges dismissal of Plaintiff's OFRA claim on the basis that Plaintiff did not follow the notice provisions of the GTCA. However, "a plaintiff asserting OFRA claims is not bound by the notice and commencement provisions of the GTCA." *Savage v. Rogers*, No.

CIV-25-300-HE, 2026 WL 2099349, at *12 (W.D. Okla. July 21, 2026). Indeed, both the Eastern and Western District Courts of Oklahoma have held that a "violation of the Oklahoma Religious Freedom Act does not give rise to tort liability, subject to the provisions of the Oklahoma Governmental Tort Claims Act." *Shrum v. City of Coweta*, 558 F. Supp. 2d 1212, 1218 (E.D. Okla. 2008); *Savage v. Rogers*, 2026 WL 2099349, at *12. That is because the two laws "are distinct with separate goals of redress—one governing torts, the other providing a remedy for the violation of a person's civil rights." *Shrum*, 558 F. Supp. 2d at 1218. "As such, the notice and immunity provisions of the Oklahoma Governmental Tort Claims Act did not apply to actions brought under the Oklahoma anti-discrimination statutes." *Id.* And as the U.S. Supreme Court recently confirmed, sovereign immunity does not otherwise apply to cities because, "cities and counties are not arms of the State despite serving public functions and exercising police powers." *Galette v. New Jersey Transit Corp.*, 607 U.S. 509, 532 (2026). The OFRA claim against the City of Broken Arrow is thus not subject to the notice or immunity provisions of the GTCA, and Claim VII should not be dismissed.

## CONCLUSION

IST has alleged significant and varied facts demonstrating unequal treatment and discrimination against IST on the basis of their Muslim religion, and a denominational preference against Islam resulting in a substantial burden on IST's religious exercise. IST has far surpassed the "low bar for surviving a motion to dismiss," *Quintana*, 973 F.3d at 1034 (10th Cir. 2020), and Defendant has failed to show that any of IST's claims warrant the "harsh remedy" of dismissal. *Brown*, 124 F.4th at 1264. IST respectfully requests the Court deny Defendant's motion in full.

Dated: October 30, 2026

Respectfully Submitted,

*/s/ Anthony M. Laizure*
Anthony M. Laizure (OBA 5170)
**Laizure Law, PLLC**
1437 South Boulder Ave., Ste. 1200
Tulsa, OK 74119
Ph: (918) 749-0749
Fax: (918) 518-7250
Email: TLaizure@LaizureLaw.com

**CAIR NATIONAL**
**LEGAL DEFENSE FUND**
/s/Lena Masri
Lena Masri (VA 20251)
Gadeir Abbas (VA 81161)
Email: gabbas@cairldf.com
Meghan Murphy (MA 711469)
Email : mmurphy@cairldf.com
453 New Jersey Ave SE
Washington, DC 20003
Ph: (202) 742-6420

*Attorneys for Plaintiffs*