**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE ISLAMIC SOCIETY OF TULSA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BROKEN ARROW, OKLAHOMA, et al.,<br><br>Defendants. | Case No. 4:26-cv-00469-SEH-MTS |

**REPLY BRIEF IN SUPPORT OF**
**THE CITY OF BROKEN ARROW'S MOTION TO DISMISS**


Shelby N. Brunette
OBA No. 33951
City of Broken Arrow, Oklahoma
Senior Civil Litigation Attorney
220 South First Street
Broken Arrow, OK 74012
(918) 259-8422, ext. 4984
(918) 259-8218 (facsimile)
sbrunette@brokenarrowok.gov

Peter D. Leary (admitted *pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 566-6210
peter.leary@troutman.com

Molly A. Mugford (admitted *pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
111 Huntington Avenue, 9th Floor
Boston, MA 02199
(617) 239-0100
molly.mugford@troutman.com

*Counsel for City of Broken Arrow, Oklahoma*

## TABLE OF CONTENTS


ARGUMENT .................................................... 1

I. The Complaint's ORFA Claim (Count VII) Is Procedurally Barred. .................... 1

II. The Complaint Does Not State an Establishment Clause Claim (Count V). .......... 2

III. The Complaint Does Not State an Equal Terms Claim Under RLUIPA (Count I). .................................................... 3

IV. The Complaint Does Not Allege Facts Sufficient for Plaintiff's Discrimination-Based Claims to Proceed (Counts II, IV, and VI). ........................ 6

V. The Complaint Does Not State a Substantial Burden Claim (Counts III and VII). .................................................... 8

CONCLUSION .................................................... 10

The City of Broken Arrow, Oklahoma respectfully submits this Reply Brief in support of its Motion to Dismiss and Brief in Support ("MTD Br."), ECF No. 27. As set forth in the City's opening brief and below, the Complaint does not state a claim against the City under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (Counts I through III); the First and Fourteenth Amendments to the U.S. Constitution (Counts IV through VI); or the Oklahoma Religious Freedom Act ("ORFA") (Count VII). Plaintiff's Opposition to the Motion to Dismiss ("Opp'n Br."), ECF No. 34, fails to show otherwise.

## <u>ARGUMENT</u>

### I. The Complaint's ORFA Claim (Count VII) Is Procedurally Barred.

Plaintiff's failure to provide notice under the Governmental Tort Claims Act ("GTCA"), 51 O.S. §§ 151–200, requires dismissal of the ORFA claim. *See* MTD Br. at 12–14. Plaintiff cites nothing in the ORFA, the GTCA, or any state court decision to support the argument that ORFA claims are not subject to the GTCA because ORFA claims are not torts. *See* Opp'n Br. at 27–28. Plaintiff relies on *Shrum v. City of Coweta*, 558 F. Supp. 2d 1212 (E.D. Okla. 2008), and an unpublished decision that relied on *Shrum* without analysis. *Savage v. Rogers*, No. CIV-25-300-HE, 2026 WL 2099349, at *12 (W.D. Okla. July 21, 2026). But the GTCA was amended after *Shrum* to expand the statute's definition of "tort." *See Conner v. State*, 577 P.3d 249, 253 (Okla. 2025). Since the 2014 amendment, courts have applied the GTCA's plain language to encompass claims under state civil rights laws like the ORFA. *See, e.g., id.* at 251. In short, *Shrum* has been superseded by statute, *Savage* is erroneous, neither is binding, and Count VII must be dismissed.[1]

[1] Citing *Galette v. New Jersey Transit Corp.*, 607 U.S. 509 (2026), Plaintiff also suggests the City lacks immunity because it is not an arm of the State. Opp'n Br. at 28. But the federal doctrine of sovereign immunity at issue in *Galette* does not limit States' ability to immunize municipalities from claims arising under state law, as Oklahoma has in the GTCA. *See* MTD Br. at 12.

## II. The Complaint Does Not State an Establishment Clause Claim (Count V).

"Denominational preference" claims under the Establishment Clause trigger strict scrutiny *only* when a challenged action *on its face* reflects explicit *differentiation* among religious practices. *See* MTD Br. at 14 (quoting *Cath. Charities Bureau, Inc. v. Wis. Lab. & Indus. Rev. Comm'n*, 605 U.S. 238, 250–51 (2025), and *Larson v. Valente*, 456 U.S. 228, 246 n.23 (1982)). Plaintiff concedes that "the Broken Arrow Zoning Ordinance does not, on its face, create a denominational preference," Opp'n Br. at 18, and fails to identify any other City policy that does so. Accordingly, strict scrutiny does not apply under the Establishment Clause, and Count V—which turns entirely on application of strict scrutiny—must be dismissed. *See* MTD Br. at 14–16 & n.4.

No case cited by Plaintiff comes close to supporting Plaintiff's argument that strict scrutiny is available under the Establishment Clause even in the absence of facial and explicit differentiation among religious practices. Most merely indicate that the Establishment Clause permits "as-applied" claims. But the issue is not whether as-applied claims are ever permissible; it is whether they can trigger strict scrutiny. And most of Plaintiff's cases do not even mention strict scrutiny, let alone apply it outside the context of facial and explicit differentiation among religions. *See Bowen v. Kendrick*, 487 U.S. 589 (1988) (no mention or application of "strict scrutiny"); *Satanic Temple, Inc. v. City of Boston*, 111 F.4th 156 (1st Cir. 2024) (same); *Croft v. Perry*, 624 F.3d 157 (5th Cir. 2010) (same); *Williamson v. Brevard Cnty.*, 928 F.3d 1296 (11th Cir. 2019) (same); *Kendrick v. Sullivan*, 125 F.R.D. 1 (D.D.C. 1989) (same); *Sherman v. Quinn*, 735 F. Supp. 2d 1035 (C.D. Ill. 2010) (same).

That makes sense, because the Supreme Court could hardly have been clearer in *Larson* and *Catholic Charities* that a challenged policy's facial and explicit differentiation among religions is a prerequisite for strict scrutiny to apply under the Establishment Clause. Plaintiff misreads *Catholic Charities* to suggest otherwise. In that case, the Supreme Court applied strict scrutiny to

a Wisconsin state law only after concluding that, as it had been interpreted by the Wisconsin Supreme Court, the law "facially differentiates among religions." 605 U.S. at 251; *see also id.* at 252 (stating the statute, as interpreted, "facially favors some denominations over others"). In other words, it was the Wisconsin Supreme Court's authoritative interpretation of the statute that facially and explicitly differentiated among religions—and therefore was subject to strict scrutiny—even if the underlying statute itself may have been subject to other interpretations. *See id.* at 250 ("Wisconsin's exemption, as interpreted by its Supreme Court, thus grants a denominational preference by explicitly differentiating between religions based on theological practices.").

Accordingly, Plaintiff is incorrect that strict scrutiny applies to its Establishment Clause claim even though Plaintiff does not challenge a policy that on its face explicitly differentiates between religious denominations. And without strict scrutiny, nothing remains of Count V.

## III. The Complaint Does Not State an Equal Terms Claim Under RLUIPA (Count I).

The City's opening brief showed that Plaintiff's purported claim under RLUIPA's "equal terms" provision, 42 U.S.C. § 2000cc(b)(1), fails because the two secular comparators Plaintiff identified are neither "assemblies" nor "institutions," as the plain language of the statute requires. *See* MTD Br. at 16–19. Plaintiff offers several responses. None has merit.

First, Plaintiff disputes that the undefined statutory terms "assembly" and "institution" should be given their ordinary "dictionary definition[s]." Opp'n Br. at 21. According to Plaintiff, giving the terms their "textbook definition[s]" would be "overly textual." *Id.* But it is well established that courts "give the words used by Congress their ordinary and common meanings" and that "[d]ictionary definitions are useful touchstones to determine the 'ordinary meaning' of an undefined statutory term." *In re Mallo*, 774 F.3d 1313, 1321 (10th Cir. 2014). Nor does Plaintiff propose any alternative meaning. Plaintiff simply would have the Court treat its proposed comparators as valid even though they are not (as Congress required) assemblies or institutions.

The cases cited by Plaintiff do not support Plaintiff's disregard for the statute's text. None allowed an equal terms claim to proceed without the plaintiff first identifying a secular assembly or institution as a comparator. Where Plaintiff's cases disagreed with *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004), was not on the threshold issue of whether a secular assembly or institution must be identified for an equal terms claim to proceed, but rather on the standard that should be used to determine whether the government's treatment of a religious assembly or institution and a secular assembly or institution was "unequal." *See River of Life Kingdom Ministries v. Vill. of Hazel Crest, Ill.*, 611 F.3d 367, 368–73 (7th Cir. 2010) (en banc); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 266 (3d Cir. 2007); *cf. Rocky Mt. Christian Church v. Bd. of Cnty. Comm'rs*, 613 F.3d 1229, 1237–38 (10th Cir. 2010) (comparator for church was a similarly situated school). The City's opening brief takes no position on that issue. Because the Complaint's secular comparators are not assemblies or institutions, Plaintiff's equal terms claim can be rejected without choosing among the standards different courts have applied to determine whether differential treatment of religious and secular assemblies and institutions amounts to an equal terms violation.

Second, Plaintiff asserts that the two comparators proffered in support of its equal terms claim, the Aspen Creek Villas and the Aequitas Tucson Development, "are assemblies or institutions within the meaning of RLUIPA"—without specifying which. Opp'n Br. at 23. Plaintiff states that these "residential developments" are "owned and operated by corporations"—citing paragraph 14 of the Complaint, which says nothing of the sort—and that such developments "often consist of Homeowners' Associations (HOA) or other community groups; host community events or are available for private events; and include gyms, pools, and recreational centers" and "are places where people live and gather"—citing no allegations in the Complaint at all. *Id.* However,

"allegations in a response brief cannot cure deficiencies in a complaint." *Osage Producers Ass'n v. Jewell*, 191 F. Supp. 3d 1243, 1251 n.4 (N.D. Okla. 2016). And even if the Complaint alleged such facts about the two residential developments at issue—and it does not—Plaintiff cites no authority for treating residential developments as comparators for equal terms claims, and at least one court has rejected such an application of RLUIPA. *See* MTD Br. at 18–19.

Third, Plaintiff states that the Complaint identified "four secular comparators" in support of its equal terms claim. Opp'n Br. at 19. But the Complaint mentions only two entities (Aspen Creek Villas and Aequitas Tucson Development) in the equal terms count. *See* Compl. ¶¶ 125–36. Besides those, Plaintiff now seeks to rely on the Villas at Battle Creek, "a proposed 35-lot residential development," *id.* ¶ 114, and Oneta 71, which the Complaint says the City rezoned "for future commercial development," *id.* ¶ 115. But neither is mentioned in the Complaint in connection with the equal terms claim, and in any event, Plaintiff identifies no facts alleged in the Complaint that would support treating either development project as an institution or assembly.

Fourth, Plaintiff proposes that the Court permit discovery on the equal terms claim even if the Complaint does not allege sufficient facts to treat any proposed comparator as an assembly or institution, suggesting that discovery may unearth facts that would allow Plaintiff to state a claim. *See* Opp'n Br. at 23–24. Respectfully, that is not how motions to dismiss work. If, as here, a plaintiff's "complaint is deficient under Rule 8, [the plaintiff] is not entitled to discovery, cabined or otherwise." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).

Finally, Plaintiff strays even farther from the Complaint by asking the Court to take judicial notice of businesses in Broken Arrow that are not mentioned anywhere in the Complaint and to permit Plaintiff to premise its equal terms claim on those businesses. *See* Opp'n Br. at 24–25. This argument is badly flawed. First, it would entail an impermissible amendment of the Complaint

through Plaintiff's brief. Second, the "existence and operations" of private businesses are not subject to judicial notice merely because such information appears on a website. Opp'n Br. at 24. Just because something appears online does not make it true, let alone "not subject to reasonable dispute," and private websites are not generally "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see, e.g.*, *MusclePharm Corp. v. Liberty Ins. Underwriters, Inc.*, 712 F. App'x 745, 757–58 (10th Cir. 2017). Finally, Plaintiff offers no information regarding any zoning action by the City as to any of these businesses, and their mere existence cannot provide the basis for claiming that the City treated Plaintiff on less than equal terms under the RLUIPA.

Accordingly, the equal terms claim in Count I of the Complaint must be dismissed.

## IV. The Complaint Does Not Allege Facts Sufficient for Plaintiff's Discrimination-Based Claims to Proceed (Counts II, IV, and VI).

Counts II, IV, and VI all hinge on Plaintiff's assertion that the denial of its zoning applications was purposefully discriminatory. The City's opening brief demonstrated that the Complaint's allegations are insufficient to support these claims. *See* MTD Br. at 19–24. In response, Plaintiff repeats the allegations in the Complaint without meaningfully addressing the deficiencies identified by the City. *See* Opp'n Br. at 2–6. Accordingly, these claims must be dismissed.

Importantly, Plaintiff does not dispute that precedent forecloses any attempt to attach liability to the City based on allegations that two of five Council members harbored anti-Muslim animus. *See* MTD Br. at 19–20. Plaintiff asserts that these allegations "are but one piece of the discrimination puzzle," Opp'n Br. at 5, but does not rebut the City's showing that the Complaint's allegations are insufficient to attribute a discriminatory purpose to a majority of the Council.

For instance, Plaintiff makes much of its claim that the Council "deviated from their own staff and Planning Commission's recommendation." Opp'n Br. at 3; *see id.* at 3–5. But nowhere

does Plaintiff address the City's points that (a) the Planning Commission and Council votes were both divided; (b) staff identified unresolved issues and concerns; and (c) Plaintiff's plans changed between the Planning Commission and Council decisions, such that it is not accurate to say that the Council reached a different conclusion from the Planning Commission and staff based on the same facts. *See* MTD Br. at 21–22. These points are undisputed.

Likewise, Plaintiff repeats that the Council deviated from its ordinary processes without countering the City's demonstration that the Complaint's allegations on this point are conclusory and insufficient to support an inference of intentional discrimination. *See* Opp'n Br. at 5; MTD Br. at 20–22. For example, in response to the City's point that the Council's decision followed a four-hour deliberative hearing, MTD Br. at 21, Plaintiff is now silent regarding the Complaint's refrain that the Council "deliberated" for only "two minutes," Compl. ¶¶ 86–87, 165(f), 183(f). Similarly, Plaintiff repeats its complaints that the Council decided Plaintiff's two applications in a single vote, Opp'n Br. at 5 (citing Compl. ¶ 86), and acted "without explanation," *id.* (citing Compl. ¶ 87), but does not address the City's points that the Council's approach was consistent with the Zoning Ordinance and that its written statement of reasons appears in the meeting minutes, MTD Br. at 22. Thus, Plaintiff's assertions that its applications were treated differently than similarly situated applications for churches are at best overstated. *See id.* at 22 n.9.

Finally, Plaintiff highlights the Complaint's allegations regarding anti-Muslim statements by Broken Arrow residents and political figures who are not City Councilors. *See* Opp'n Br. at 2–3, 5. As the City previously stated, there is no question that "some members of the public voiced opposition to Plaintiff's applications on religious grounds that the Council could not permissibly—and did not—consider." MTD Br. at 23. But "the presence of community opposition does not, without more, imply a conclusion of intentional discrimination by the decisionmaker," *id.* (quoting

*Calvary Chapel Belfast v. Univ. of Me. Sys.*, 180 F.4th 13, 29 (1st Cir. 2026)). And that inference becomes even more untenable when a government body's own conduct in the proceedings, as here, reflects a focus on permissible concerns and demonstrates efforts to maintain respectful proceedings and reprimand unruly members of the crowd. *See* MTD Br. at 1, 9–10, 23, 24.

Thus, the allegations in the Complaint are insufficient to sustain Counts II, IV, and VI.[2]

**V. The Complaint Does Not State a Substantial Burden Claim (Counts III and VII).**

Finally, the Complaint does not state a "substantial burden" claim under the RLUIPA or ORFA. *See* MTD Br. at 26–30. At the outset, Plaintiff is wrong about the governing standard. Plaintiff cites no authority for its assertion that the standard for assessing substantial burden claims under the RLUIPA and ORFA is different from the standard for assessing substantial burden claims under the Free Exercise Clause. *See* Opp'n Br. at 6 n.1. The Tenth Circuit said otherwise in *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 661 (10th Cir. 2006), which Plaintiff fails to address. *See* MTD Br. at 26–27. As the City demonstrated in its opening brief, the "substantial burden" analysis should focus on whether the government's action prohibits the exercise of religion, coerces individuals into violating their religious beliefs, or penalizes religious activity. *See id.* at 27–28.

*Lyng v. Northwest Indian Cemetery Protective Association*, 485 U.S. 439 (1988), is illustrative of how this analysis is conducted, and Plaintiff fails to explain how the Complaint's substantial burden claims can survive under the governing standard. Besides suggesting incorrectly

[2] In addition to explaining why the Complaint does not adequately allege discrimination by the City, the opening brief noted that the Complaint cannot be read to state any other type of claim under the Free Exercise Clause. *See* MTD Br. at 24–26. Plaintiff responds that the City denied its applications "because of its identity as an Islamic group" or "because they were Muslims seeking to use their land for an Islamic purpose." Opp'n Br. at 15. Accordingly, the City does not understand Plaintiff to be advancing any Free Exercise Clause theory that does not turn on Plaintiff's allegation that the City acted with a discriminatory purpose.

that the RLUIPA's "substantial burden" test differs from the "substantial burden" standard under the Free Exercise Clause, *see* Opp'n Br. at 9–10, Plaintiff attempts to avoid application of *Lyng*'s "substantial burden" analysis by noting that "the ruling in *Lyng* hinged on the fact that the government action was 'neutral and generally applicable without regard to religion.'" *Id.* at 9 (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 460 (2017)). But the neutrality towards religion of the government action challenged in *Lyng* was not a sufficient basis for the Court to reject the Free Exercise Clause claim in that case; rather, the Court went on to consider whether the asserted burden from the challenged government action was so substantial as to impair the free exercise of religion and then to conclude that it did not. *See* 485 U.S. at 447–53. That is the same question that must be asked under RLUIPA regarding the City's application of its religiously neutral zoning ordinances. And contrary to Plaintiff's contention, *see* Opp'n Br. at 10, Plaintiff's ownership of the land at issue in this case does not mean that the City's action here prohibited the exercise of religion, coerced individuals into violating their religious beliefs, or penalized religious activity any more than the government action at issue in *Lyng*.

Rather than explain how its substantial burden claims pass muster under Supreme Court and Tenth Circuit case law regarding religious land uses,[3] Plaintiff relies upon cases from other jurisdictions, including decisions like *Anash, Inc. v. Borough of Kingston*, 184 F.4th 214 (3d Cir. 2026), that are clear outliers. *See id.* at 249–51 (Restrepo, J., dissenting) (explaining the majority's

[3] Plaintiff does cite a Tenth Circuit RLUIPA case involving institutionalized persons. *See* Opp'n Br. at 9 (citing *Yellowbear v. Lampert*, 741 F.3d 48, 55 (10th Cir. 2014)). Although the substantial burden analysis is not necessarily the same in the land use and institutionalized persons contexts, *Yellowbear* confirms the City's position that the substantial burden analysis in this Circuit aligns with Free Exercise caselaw and focuses on whether "the government (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief." *Yellowbear*, 741 F.3d at 55 (citing *Lyng* among other cases).

departures from other circuits). Plaintiff also erroneously relies on cases in which a religious organization purchased property with a reasonable expectation that a particular building could be constructed there for religious use. *See* Opp'n Br. at 7–8. Here, Plaintiff purchased the subject property subject to the same restrictions that apply today, and Plaintiff does not address the City's argument that this fact undermines its substantial burden claim. *See* MTD Br. at 29. In any event, Plaintiff cannot demonstrate a substantial burden under controlling law where the subject property lacks any particular religious significance of its own, and where there is no allegation regarding the unavailability of other sites or the prospects of a subsequent and different application regarding the subject property.[4]

For these reasons, the law of this Circuit requires that Plaintiff's substantial burden claims be dismissed.[5]

## CONCLUSION

The Motion to Dismiss filed by the City of Broken Arrow should be granted, and the Complaint should be dismissed as to the City.

---

[4] It is unnecessary to consider at this stage Plaintiff's argument that the City cannot satisfy strict scrutiny in connection with the Complaint's "substantial burden" counts. *See* Opp'n Br. at 10–14. If the Court concludes that the Complaint adequately alleges a substantial burden as a threshold issue, application of strict scrutiny can be addressed after discovery.

[5] Although Plaintiff's substantial burden claims fall short under the standard supported by Tenth Circuit precedent, other circuits have adopted varying approaches. The U.S. Supreme Court has granted certiorari in *Missionaries of St. John the Baptist, Inc. v. Frederic*, No. 25-1131, which raises the question of which standard governs. In light of this development, the City filed its pending Motion to Stay this litigation. ECF No. 35.

Dated: November 13, 2026

Respectfully submitted,

*/s/ Peter D. Leary*

Peter D. Leary (admitted *pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 566-6210
peter.leary@troutman.com

Molly A. Mugford (admitted *pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
111 Huntington Avenue, 9th Floor
Boston, MA 02199
(617) 239-0100
molly.mugford@troutman.com

Shelby N. Brunette
OBA No. 33951
City of Broken Arrow, Oklahoma
Senior Civil Litigation Attorney
220 South First Street
Broken Arrow, OK 74012
(918) 259-8422, ext. 4984
(918) 259-8218 (facsimile)
sbrunette@brokenarrowok.gov

*Counsel for City of Broken Arrow, Oklahoma*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Anthony M. Laizure
Laizure Law, PLLC
1437 South Boulder Ave., Ste. 1200
Tulsa, OK 74119
(918) 749-0749
(918) 518-7250 (facsimile)
TLaizure@LaizureLaw.com

Lena Masri
Meghan Murphy
CAIR National Legal Defense Fund
453 New Jersey Ave SE
Washington, DC 20003
(202) 742-6420
Ldf@cair.com
Mmurphy@cair.com

Amy A. Fogleman
R. Trent Shores
Adam C. Doverspike
GABLEGOTWALS
110 N. Elgin Ave., Suite 200
Tulsa, Oklahoma 74120
T: (918) 595-4800 | F: (918) 595-4800
afogleman@gablelaw.com
tshores@gablelaw.com
adoverspike@gablelaw.com

*/s/ Peter D. Leary*
Peter D. Leary